### 72583. BREEDLOVE v. HURST.
(351 SE2d 212)

BEASLEY, Judge.

Appellee Hurst was a general partner in the limited partnership of Bolling Ridge Estates, the owner of a tract of property in Hall County. In 1973, Hurst contacted appellant Breedlove, a real estate appraiser, and put him in communication with Hillman, a prospective purchaser of the property.

As a result of this contact, Breedlove and Hillman reached an agreement whereby, for a total fee of $8,500, Breedlove would prepare two appraisals of the property. Hillman paid a retainer of $1,000, and Breedlove prepared the appraisals in late 1973. Hillman received the appraisal reports, but made no further payments to Breedlove, despite his numerous requests.

The property was under a contract to Hillman, and Hurst expected to receive a commission on the completion of this sale. In early 1974, some of the limited partners in Bolling Ridge Estates contemplated leaving the partnership. Hurst contacted Breedlove and requested the appraisals for these limited partners, to retain their participation. Because he had not been paid by Hillman, Breedlove required that Hurst sign a letter, drafted by Breedlove, before the appraisal copies were turned over. It said in pertinent part: "The undersigned, a partner in the ownership of the Bolling Ridge Property, acknowledges receipt of these reports and also guarantees payment of $7,500, plus interest at 8% beginning 90 days from this date, to John T. Breedlove, M.A.I., on or before the date of sale of the Bolling Ridge Property. The undersigned understands that if the total fee of $8,500 is paid by Mr. J. R. Hillman on or before the sale of the property, he and his associates will be relieved of the responsibility of payment. The undersigned agrees, however, that if only a part of the total fee of $8,500 is paid by Mr. Hillman, he and his associates will be responsible for payment of the balance of the total fee on or before the sale of the property." Hurst also paid a copying charge to Breedlove for the reports, which charge was not referred to in the letter.

The sale to Hillman was not completed. In 1982 a partnership in

which Hurst was a limited partner purchased the property.

Hurst acknowledged signing the letter, which on its face shows that the deletion of a paragraph was initialed by both parties. While there was some dispute in the testimony as to whether Hurst received only one or both of the appraisals, the letter acknowledged receipt of both reports, Hurst admitted receipt of one, and on appeal he states that he does not contest obtaining the reports from Breedlove.

The court, sitting without a jury, found as a matter of law that the letter was without consideration in that "[n]either Defendant [Hurst] nor Mr. Hillman received any consideration for Defendant's signing the January 8, 1974 letter to Mr. Breedlove."

1. While Hurst was apparently dissatisfied in 1982 with the bargain he struck in 1974, the time at which the existence and adequacy of consideration is determined is the time of contracting. *Pitts Truck Air, Inc. v. Mack Trucks, Inc.*, 173 Ga. App. 801 (3) (328 SE2d 416) (1985). The letter having been executed in 1974, the rights and obligations of the parties thereunder must be determined under the law as it then existed. *Griffin v. Georgia-Pacific Corp.*, 177 Ga. App. 852 (1) (341 SE2d 499) (1986); *Ford Motor Credit Co. v. Sullivan*, 170 Ga. App. 718 (1) (318 SE2d 188) (1984).

Former Code § 20-302, amended in 1981 (see OCGA § 13-3-42), provided that "[a] consideration is valid if any benefit accrues to him who makes the promise, or any injury to him who receives the promise." See *Zachos v. C & S Nat. Bank*, 213 Ga. 619 (100 SE2d 418) (1957).

At the time of the letter agreement, Hurst, general partner of Bolling Ridge Estates, was attempting to sell the property to Hillman. As he testified, his reason for wanting the appraisals was for the partners in his syndication as some were considering dropping out. He chose not to seek the reports from Hillman.

Benefit accrued to Hurst as a result of the letter agreement he signed in that he obtained authoritative information he desired for his own use in connection with his partnership. The value of the information, which was based on Breedlove's professional expertise, was independent of the copying charges which he contends constituted full payment for what he received. The agreement related to the *content* of the documents, not to the physical paper. That is all that the law requires. Slight consideration is sufficient to sustain a contract. *Austell v. Rice*, 5 Ga. 472 (1848) (see former Code § 20-302). That this transaction encompasses more than the promise to pay the preexisting debt of another, which is discussed below, is shown by Hurst's promise not only to pay the balance of the fee for the appraisals, but also to pay interest at 8%, beginning 90 days from the date of the letter. This was more than the legal rate and was more than Breedlove could have collected from Hillman in prejudgment interest.

OCGA §§ 7-4-2 and 13-6-13 (former Code §§ 57-101 and 20-1408). Thus, the uncontradicted evidence showed that Hurst obtained the appraisal reports to which he otherwise had no right. In return, he agreed to pay any outstanding balance not paid by Hillman, upon the sale of the property, plus interest.

2. Another basis used by the trial court for its judgment was that the letter was a promise to pay the pre-existing debt of Hillman. That fact, alone, is not enough to make the contract void. Prior to the 1981 statutory change which did away with the distinctions between guaranty and suretyship, Code § 103-101 provided: "[t]he contract of suretyship is one whereby a person obligates himself to pay the debt of another in consideration of credit or indulgence, or other benefit given to his principal, the principal remaining bound therefor. It differs from a guaranty in this, that the consideration of the latter is a benefit flowing to the guarantor." As discussed in Division 1, there was a benefit flowing to Hurst in the form of the appraisals. Historically the guaranty was considered to go to the solvency of the principal, thus requiring some evidence of insolvency prior to a right to recover against the guarantor, *Nichols v. Miller*, 91 Ga. App. 99 (84 SE2d 841) (1954). In more recent years, our courts have analyzed the particular document involved and made a determination of the intent of the parties, regardless of the label attached to the transaction by the parties. *Griffin v. Georgia-Pacific Corp.*, supra; *Griswold v. Whetsell*, 157 Ga. App. 800 (278 SE2d 753) (1981). Both cases dealt with pre-1981 transactions.

The facts do not indicate an intention of the parties to condition Hurst's obligation to pay on Hillman's *inability* to pay, but merely upon Hillman's *failure* to pay. The failure to pay having been shown, along with the other condition, the sale of the property, a binding contract of guaranty was proven, which is enforceable under Georgia law. *Ford Motor Credit Co. v. Sullivan*, 170 Ga. App. 718 (318 SE2d 188) (1984) (pre 1981 contract); *Williams Valve Co. v. Amorous*, 19 Ga. App. 155 (91 SE 240) (1916). The agreement contained two conditions precedent to Hurst's obligation to pay the balance of the fee: (1) the sale of the property (despite Hurst's contention, there is no requirement in the letter that the property be sold to Hillman, merely that it be sold) and (2) that the fee or any portion of it remain unpaid by Hillman. Such conditions are recognized in our law. Former Code § 20-110 (now OCGA § 13-3-4). It is not disputed by Hurst that both conditions occurred in 1982.

3. To the extent that Hurst attempted to benefit from former Code § 103-205 (OCGA § 10-7-24), he has failed to prove that he gave Breedlove the required notice. In addition, since the principal apparently resides out of state, that section is not applicable to the present action. Code § 103-205; see *United States v. Blue Dolphin Associates*,

*Inc.*, 620 FSupp. 463 (S.D. Ga. 1985).

The judgment of the trial court is reversed.

*Judgment reversed. Deen, P. J., and Benham, J., concur.*

DECIDED OCTOBER 22, 1986 —
REHEARING DENIED NOVEMBER 13, 1986 — 

*William Boyd Lyons*, for appellant.
*Jud E. McNatt*, for appellee.