A05A1191. TELCOM COST CONSULTING, INC. et al. v. WARREN.
(621 SE2d 864)

MIKELL, Judge.

Telcom Cost Consulting, Inc. ("TCC"), and Robert Alan Lacher (hereinafter, "plaintiffs"), appeal the judgment entered on the jury's

$493,663.24 verdict in favor of Jeffery T. Warren on his counterclaim for conversion and breach of fiduciary duty. Plaintiffs further appeal the order denying their motion for new trial and judgment notwithstanding the verdict (j.n.o.v.). We affirm.

TCC, a telecommunications consulting business, was incorporated on April 1, 1996, with Lacher as its sole shareholder. On January 1, 1998, Warren became a fifty percent shareholder, and the two men entered into a Shareholders' Agreement ("Agreement"), which, among other things, placed certain restrictions on the transfer of stock. The offer to buy stock was required to be in writing. The Agreement also specified that it could not be modified, except in writing. However, Lacher alleged that he and Warren reached an oral agreement in late 1998 pursuant to which Lacher would reacquire Warren's stock in exchange for payment of a $250,000 commission. Lacher further alleged that Warren refused to tender his stock certificate after receiving the payment and other sums due to him. Based on these allegations, TCC filed an action against Warren in Forsyth County for specific performance, conversion, bad faith, and punitive damages. Warren answered, denying the existence of the oral agreement. Warren also filed a counterclaim, seeking an inspection of TCC's books and records, an accounting, damages for conversion of profits, recovery for unauthorized corporate acts, and attorney fees and punitive damages. Because Lacher resided in Cobb County, Warren brought a separate action against him there, alleging claims, among other things, of conversion and breach of fiduciary duty/usurpation of corporate opportunity.

Lacher was subsequently added as a plaintiff in the Forsyth County action, and the pretrial order was amended to add claims asserted by Warren in the Cobb suit. At trial in Forsyth County, Warren asserted two counterclaims, conversion of profits and breach of fiduciary duty. After a one-week trial, the jury returned a verdict for Warren in the amount of $493,663.24 but declined to award him attorney fees or punitive damages. Plaintiffs filed a motion for new trial or, alternatively, j.n.o.v. The motion was denied, and this appeal followed.

1. In their first enumeration of error, plaintiffs argue that the trial court erred in allowing Warren's wife, Jennifer, to testify to prior consistent statements made by her husband concerning his ownership of TCC stock. Warren argues that plaintiffs failed to preserve this issue for appellate review by failing to make a motion in limine or a continuing objection and then failing to object after each such statement offered by Mrs. Warren.

> [E]rror can be enumerated upon subsequently introduced testimony if a continuing objection was interposed in the

first instance. Continuing objections eliminate the need to repeat an objection where the trial court's ruling on the first objection clearly covers subsequent proceedings and the court has granted a party the right to have a continuing objection. If the court does not specifically grant a right to a continuing objection, it is counsel's duty to object to testimony as it is offered.[1]

In the case at bar, plaintiffs' counsel made neither a motion in limine nor a continuing objection. Rather, after Warren's counsel asked Mrs. Warren whether she and her husband had discussed his relationship with TCC, plaintiffs' counsel objected on the ground that the response called for hearsay. The court ruled that because Warren's veracity had been attacked on this issue during cross-examination, his prior consistent statements to his wife would be admissible. Thereafter, Mrs. Warren testified that her husband had never acted in a manner, or made statements, inconsistent with ownership of TCC stock.

Plaintiffs claim the court's ruling was the "functional equivalent of a motion in limine denied," relieving them of the need to object later, for instance, when the witness testified at length concerning Warren's belief that he was entitled to payments from three specific accounts on which Warren and Lacher were working together.[2] We disagree.

A motion in limine is a pretrial motion which may be used two ways: 1) The movant seeks, not a *final* ruling on the admissibility of evidence, but only to prevent the mention by anyone, during the trial, of a certain item of evidence or area of inquiry until its admissibility can be determined *during the course of the trial* outside the presence of the jury. 2) The movant seeks a ruling on the admissibility of evidence prior to the trial.[3]

Here, plaintiffs' counsel asserted an objection in the middle of trial and, in the first instance, in the presence of the jury. This does not equal a motion in limine.

More significantly, when plaintiffs' counsel asserted a hearsay objection, and defense counsel complained that the court had already

---

[1] (Citations omitted.) *State v. Larocque*, 268 Ga. 352, 353 (489 SE2d 806) (1997). Accord *Werner v. State*, 246 Ga. App. 677, 679 (1) (538 SE2d 168) (2000).

[2] See *Reno v. Reno*, 249 Ga. 855 (295 SE2d 94) (1982).

[3] (Citation omitted; emphasis in original.) *Harper v. Patterson*, 270 Ga. App. 437, 441 (3) (606 SE2d 887) (2004).

ruled on it, the court excused the jury and explained its ruling, stating to defense counsel: "If you ask her questions about statements that he made to her that he did not make on the stand, then they'll object and I'm going to sustain it." Plaintiffs' counsel stated: "Your Honor, I will attempt to limit my objections very significantly . . . just taking it question by question." Finally, the court instructed plaintiffs' counsel to object to specific testimony. "THE COURT: We'll do it on . . . a question by question basis. If you believe it to be something he did not testify about, then object." Therefore, it was incumbent upon plaintiffs to obey the court's instruction to object on a question by question basis. Consequently, plaintiffs have waived for appellate review any objection to testimony that they failed to assert at trial.

Finally, even if this issue had been properly preserved for appellate review, we would find no error, as the trial court followed the dictates of *Woodard v. State.*[4] Under *Woodard*, a witness's prior consistent statement is admissible if the veracity of the witness's trial testimony has been placed in issue, the witness is present, and the witness is available for cross-examination.[5] Here, it is undisputed that the last two factors were met; the only question is whether the veracity of Warren's trial testimony had been placed in issue. A witness's veracity is considered to have been placed in issue for this purpose "if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination."[6] This question is best answered by reciting a portion of plaintiffs' cross-examination of Warren, when plaintiffs sought to impeach him with his deposition testimony concerning whether he had made a counteroffer regarding the sale of his stock to Lacher: "This is a case about credibility. . . . [Warren] maintained one position at one time, then his lawyer told him something different and he changed his position on the record. And the jury needs to know that to assess this man's credibility." This colloquy intimates both recent fabrication by Warren and improper influence by his counsel. Warren's prior consistent statements to his wife on his issue of stock ownership were properly admitted under *Woodard* and did not constitute a prohibited bolstering of his general credibility.[7]

2. Plaintiffs next enumerate as error the trial court's denial of their motion for a directed verdict and j.n.o.v. on Warren's claim of breach of fiduciary duty/usurpation of corporate opportunity. At trial, plaintiffs argued that this claim could not be brought in a direct

---

[4] 269 Ga. 317 (496 SE2d 896) (1998).

[5] Id. at 320 (2).

[6] (Footnote omitted.) Id.

[7] See id. (prior consistent statements are not admissible merely to bolster witness's credibility).

action, citing the general rule that a suit by a shareholder to recover damages for breach of fiduciary duties owed to the corporation must be brought as a derivative suit on behalf of the corporation.[8] Plaintiffs further cited the "special injury" test adopted by the Supreme Court in *Grace Bros., Ltd. v. Farley Indus.*,[9] in which the Court held that "outside the context of a close corporation, a shareholder must be injured in a way which is different from the other shareholders or independently of the corporation to have standing to assert a direct action."[10] Plaintiffs argued that *Grace Bros.* had been interpreted as limiting any direct action to the context of a statutory close corporation, as defined in OCGA § 14-2-902, and that since TCC did not fit that definition, Warren could not recover directly for Lacher's breach of fiduciary duty.[11]

In response, Warren relied on *Thomas v. Dickson*,[12] in which the Supreme Court permitted the minority shareholder of a close corporation to bring a direct action against the majority shareholders for misappropriation of corporate funds. *Thomas* acknowledged the general rule requiring a shareholder to bring a derivative action but held that in "exceptional" circumstances, courts should examine the "realistic objectives" of a suit to determine if a direct action is proper.[13] The Court examined the reasons underlying the general rule and found them inapplicable in *Thomas*, essentially creating a four-part test for deciding when to require a derivative action: (1) Will the direct action result in a multiplicity of actions by other shareholders? (2) Are there corporate creditors in need of protection? (3) Will the interests of the remaining shareholders be prejudiced by a recovery by one shareholder? (4) Would the injured shareholder be adequately compensated by a corporate recovery?[14] Following *Thomas*, this Court has held that direct actions were proper even though the corporate entities at issue had not been created as statutory close corporations pursuant to OCGA § 14-2-902.[15]

After the trial court presciently denied the plaintiffs' motion for j.n.o.v. on this issue in accordance with *Thomas* and its progeny, this

---

[8] *Phoenix Airline Svcs. v. Metro Airlines*, 260 Ga. 584, 585 (1) (397 SE2d 699) (1990).

[9] 264 Ga. 817 (450 SE2d 814) (1995).

[10] (Footnotes omitted.) Id. at 819 (2).

[11] See *Carter v. Murphey*, 256 Ga. App. 150, 152 (2) (b) (567 SE2d 326) (2002); *Jamal v. Pirani*, 227 Ga. App. 713, 714 (2) (490 SE2d 140) (1997); both overruled in *Stoker v. Bellemeade, LLC*, 272 Ga. App. 817, 824 (3) (615 SE2d 1) (2005).

[12] 250 Ga. 772 (301 SE2d 49) (1983).

[13] Id. at 774.

[14] Id.

[15] *Mon Ami Intl. v. Gale*, 264 Ga. App. 739, 743-744 (3) (592 SE2d 83) (2003); *Parks v. Multimedia Technologies*, 239 Ga. App. 282, 287 (2) (520 SE2d 517) (1999); *Dunaway v. Parker*, 215 Ga. App. 841, 845-846 (1) (453 SE2d 43) (1994).

Court issued the whole court decision of *Stoker v. Bellemeade, LLC*,[16] holding that "a direct action is proper in the context of a close corporation where the exceptional circumstances found in *Thomas*, [cit.], are present, even though the corporation was not created pursuant to OCGA § 14-2-901 et seq."[17] *Stoker* is apposite and controlling, and we decline plaintiffs' invitation to overrule it.[18] The trial court did not err in denying plaintiffs' motions for directed verdict and j.n.o.v. on Warren's claim of breach of fiduciary duty/usurpation of corporate opportunity.

3. In their final enumeration of error, plaintiffs contend that the trial court erroneously denied their motions for a directed verdict and j.n.o.v. on Warren's conversion claim.

"Conversion involves the unauthorized assumption and exercise of right of ownership over personalty of another, contrary to the owner's rights. Any act of dominion wrongfully asserted over another's personal property which is in denial of his property rights, or inconsistent with them, is a conversion."[19] Here, plaintiffs contend that the profits which Warren sought to recover were not subject to a claim of conversion because such profits were merely a sum of money and not specific currency,[20] and Warren did not demonstrate a present possessory interest in the funds. Warren counters that a conversion claim may rest, as it does in the case at bar, on breach of fiduciary duty.[21]

In order to affirm the judgment, however, we need not determine whether the trial court properly denied plaintiffs' motions for directed verdict and j.n.o.v. on Warren's conversion claim. The verdict is sustainable on the breach of fiduciary claim.[22] We do not reach the conversion issues.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED OCTOBER 13, 2005 — 

*Gambrell & Stolz, Steven G. Hall, Seaton D. Purdom*, for appellants.

---

[16] Supra.

[17] Id. at 823 (3).

[18] Plaintiffs do not challenge the trial court's findings that the exceptional circumstances set forth in *Thomas* exist in this case.

[19] (Citation and punctuation omitted.) *Multimedia Technologies v. Wilding*, 262 Ga. App. 576, 578 (2) (a) (586 SE2d 74) (2003).

[20] See *Decatur Auto Center v. Wachovia Bank*, 276 Ga. 817, 821 (583 SE2d 6) (2003).

[21] *Schoenbaum Ltd. Co. v. Lenox Pines*, 262 Ga. App. 457, 467 (6) (585 SE2d 643) (2003); *Multimedia Technologies*, supra.

[22] See *GLW Intl. Corp. v. Yao*, 243 Ga. App. 38, 42-43 (4) (532 SE2d 151) (2000).

*Weinstock & Scavo, Michael Weinstock, John B. Levy, Timothy S. McConnell*, for appellee.